IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
COLUMBIA DIVISION

| | | |
|---|---|---|
| JOHN TYLER COBB, | ) | |
| | ) | Case No. _____ |
| Plaintiff, | ) | |
| | ) | JURY DEMAND |
| v. | ) | |
| | ) | |
| CITY OF COLUMBIA, TENNESSEE, | ) | |
| and Tony Massey, individually, | ) | |
| | ) | |
| Defendants. | ) | |

## COMPLAINT

For his Complaint against the City of Columbia ("Defendant") and Tony Massey, individually, Plaintiff John Tyler Cobb ("Ty Cobb" or "Plaintiff") states:

## JURISDICTION AND VENUE

1.      Plaintiff is a citizen and resident of Maury County, Tennessee, and a former employee of Defendant.

2.      Defendant employs over 300 people in the Middle District of Tennessee.

3.      This court has subject matter jurisdiction in this matter pursuant to 28 U.S.C. § 1331 and 1343(a)(4).  Venue is proper in this judicial district under 28 U.S.C. § 1391.

## FACTUAL ALLEGATIONS

### Ty Cobb

4.      Plaintiff, John Tyler "Ty" Cobb, was first employed by the City of Columbia in February of 1999.

5.      Plaintiff was a civil service employee and subject to Civil Service Rules.

6.      After an extraordinary career advancing in the Fire Department, Mr. Cobb was promoted to become the Fire Chief in July of 2017, named Maury County's Citizen of the Year in 2018, and named Career Fire Chief of the Year by the Tennessee Fire Chief's Association in 2022.

**In Response to a May 2023 Active Shooter Call, a Civilian Carries an AR-15 onto Columbia Central High School Property Alongside a SWAT Team**

7.     On May 3, 2023, there was a report of an active school shooter at Columbia Central High School indicating that students had been shot.

8.     A SWAT (Special Weapons And Tactics) team was dispatched to Columbia Central High School.

9.     The SWAT team was comprised of trained professionals employed by the City of Columbia and/or Maury Country.

10.     Members of the SWAT team carry AR-15 rifles, which are semi-automatic weapons.

11.     Civilians are not allowed on the SWAT team or to "join up" with the SWAT team after they have been dispatched.

12.     Civilians are not allowed to possess firearms on school property.

13.     At that time, in May of 2023, Roy Brooks, who previously worked for both the Fire Department and the Police Department, was a civilian.

14.     After hearing about the school shooter via a 9-1-1 Dispatch Report, Mr. Cobb went to the school to help.  As Mr. Cobb was arriving at the scene, the Chief of Police called Mr. Cobb and informed him that he was not needed because the call was a hoax.

15.     While Mr. Cobb did not see Mr. Brooks at the school, the Deputy Fire Chief, Nick Brown, called Mr. Cobb because he saw Mr. Brooks, a civilian, carrying an AR-15 on school property alongside of the SWAT team.

16.     Mr. Brooks had previously been terminated by the Fire Department and had a civil service hearing in August of 2022.

17.     While on school property, upon information and belief, Mr. Brooks pointed his AR-15 at an individual.

18.     Based on Mr. Brooks being a civilian, coupled with information Mr. Cobb learned about Mr. Brooks during his civil service hearing and while working with Mr. Brooks, Mr. Cobb was extremely concerned that Mr. Brooks was in possession of an AR-15 on school property and that he had randomly joined up with the SWAT team despite not being a member of the team.

19.     Mr. Brooks' actions of carrying a weapon on school property was against the law.

20.     Recognizing the violation of the law as well as the significant number of public safety issues it (as well as being allowed to act as though he was a member of the SWAT team when he was not) posed, Mr. Cobb decided that he could not be silent.

## **Plaintiff Reports Mr. Brooks' Illegal Actions**

21.     On May 3, 2023, Mr. Cobb contacted the Chief of Police, Jeremy Alsup, and informed him that he believed Roy Brooks was on the scene with an AR-15.

22.     The Chief of Police told Mr. Cobb that there was no way Roy Brooks was at the scene and claimed that it must have been "someone else" who looked like Mr. Brooks.

23.     Mr. Cobb also informed the City Manager, Tony Massey, about Mr. Brooks being on the scene with an AR-15.  Mr. Massey stated to Mr. Cobb that maybe Mr. Brooks was at the scene with another agency.

24.     After the incident, Mr. Cobb was at a 9-1-1 Board meeting with Sheriff Bucky Rowland and inquired as to whether Mr. Brooks was working with the Sherriff's department. Sheriff Rowland stated that Mr. Brooks was not employed with the department and was not working with his department in any capacity.

25.     The Deputy Fire Chief was insistent that it was Mr. Brooks at the scene and continued to express his concerns to Mr. Cobb.

26.     Upon further investigation in his official capacity as the Fire Chief and as a member of the City's 9-1-1 Board, Mr. Cobb later received a video that confirmed his belief:  Mr. Brooks, a civilian, had, in fact, joined in with the SWAT team without being a member of the team and was carrying an AR-15.

27.     On or about May 10, 2023, Mr. Cobb took pictures he had received of Mr. Brooks at the scene to the City Manager and the HR Director and requested an investigation.

28.     Upon information and belief, it was at this time when the Mayor of Columbia, Chaz Molder, was informed of the situation.

29.     Later that month, Mr. Cobb was not reappointed to the position he held with the Maury County 9-1-1 Board.

30.     Some firefighters complained to Mr. Cobb that they were being harassed by Roy Brooks.

31.     The Fire Chief informed all employees to report harassment to the City Manager and/or the Human Resource Department.  He also reported the harassment to the City Manager and Human Resource Department.

32.     Defendants took no action regarding the reports of harassment and the harassment continued.

33.     Mr. Cobb reached out to the City Attorney, Tim Tisher, on two separate occasions regarding the status of any investigation regarding Mr. Brooks being at the school with an AR-15 as well as harassment by Mr. Brooks.

34.     Mr. Cobb asked Mr. Tisher that an investigation be conducted but noted that he was worried about the City Manager, Tony Massey.  Mr. Cobb explained to Mr. Tisher that he believed Mr. Massey wanted to "cover up" what had happened.

35.     Mr. Tisher told Mr. Cobb that "Tony Massey was not his enemy."

36.     The City Attorney and Mr. Cobb discussed Mr. Cobb having a meeting with members of the City Council to inform them of what was going on.

37.     During this time, the City Manager's wife, Connie Massey, went to city employees asking if they believed Mr. Cobb was "acting crazy" or if he was "having marital problems."

38.     On October 12, 2023, during an Executive City Council Session, Mr. Cobb made a presentation to the City Manager, City Attorney and Columbia City Council members showing them the video of Mr. Brooks, a civilian, on school property with an AR-15.  Mr. Cobb noted the extreme dangers of the situation and insisted on a full and complete investigation for the well-being of the community.  He also noted that he was afraid of being retaliated against.

39.     Mr. Cobb also advised those in attendance about harassment against him and that multiple firefighters had also complained about harassment.

40.     Mr. Brooks was eventually indicted by a grand jury on a charge of carrying a weapon on school property, which is a criminal offense against public health, safety and welfare.  However, the charges were ultimately (inexplicably) dropped on the eve of his trial.

### PLAINTIFF IS RETALIATED AGAINST

41.     In response to Mr. Cobb's complaints and showing the video to members of the City Council during the Executive Session, the City Manager told Mr. Cobb that he could not ignore what happened and suspended him without pay from October 30, 2023, until November 27, 2023.

42.     The City Manager also placed Mr. Cobb on probation from November 27, 2023, until November 27, 2024.

43.     The reason given for both Mr. Cobbs suspension and probation was "insubordination."

44. Mr. Cobb had not been insubordinate and Defendants never provided any reason as to why or how Mr. Cobb was allegedly insubordinate.

45. The City of Columbia has a progressive discipline policy that requires the City to provide written notice to an employee that contains specific times, places and other pertinent facts concerning charges prior to a final decision being rendered as to suspension.

46. Defendants did not follow their own disciplinary policy and procedures.

47. On March 12, 2024, on behalf of the City of Columbia, the City Manager, Tony Massey, terminated Plaintiff.

48. The termination was for alleged "unacceptable activities" that occurred while Mr. Cobb was on his one-year probation.

49. But for being previously placed on probation, Mr. Cobb would not have been terminated.

50. Specifically, the City Manager informed Mr. Cobb that, while he was still on probation, a "concerned citizen" presented text messages to the City that evidenced a "continuation of such insubordinate behavior" as well as an effort to "undermine and impede the successful operations of the City."

52. Defendants did not show Mr. Cobb the alleged text messages or identify the citizen.

53. The City Manager never discussed the alleged messages with Mr. Cobb or afforded him an opportunity to appeal the decision.

54. As the City Manager, Mr. Massey makes the final decision concerning disciplinary actions.

55. After the City Manager terminated Mr. Cobb, the City Manager told employees why Mr. Cobb was terminated and indicated to the employees that Mr. Cobb was having an inappropriate sexual relationship.

56. Any suggestion that Mr. Cobb was having an inappropriate sexual relationship was defamatory and completely untrue.

57. The City Manager and his wife continued to publicly defame Mr. Cobb.

58. As a result of the termination, Mr. Cobb lost his income and employment benefits, including health insurance and retirement.

59. Despite the City of Columbia's Municipal Code, Mr. Massey denied the Plaintiff the opportunity to have a civil service hearing that the Plaintiff ultimately requested.

60.     Mr. Cobb was forced to file a writ of Mandamus with the Circuit Court of Maury County, Tennessee.

61.     On August 2, 2024, Judge David Allen found that the City of Columbia had erred by not granting the Plaintiff the opportunity to have a civil service hearing.

62.     Judge David Allen granted Plaintiff a Writ of Mandamus and found, in part, that the Plaintiff had a clear right to a hearing.

## First Amendment Retaliation

63.     Plaintiff incorporates the preceding paragraphs.

64.     Plaintiff engaged in constitutionally protected speech.

65.     Plaintiff's suspension and probation were adverse actions that caused Plaintiff to suffer an injury that would likely chill a person of ordinary fitness from speaking out and exercising his First Amendment rights.

66.     Plaintiff's termination was an adverse action that caused Plaintiff to suffer an injury that would likely chill a person of ordinary fitness from speaking out and exercising his First Amendment rights.

67.     Plaintiff's protected speech was a motivating factor in Defendants' adverse employment actions.

68.     Defendants retaliated against Plaintiff in violation of 28 U.S.C. Section 1983.

69.     Plaintiff had a clear right not to be suspended, placed on probation, or terminated by the City Manager and the City of Columbia for exercising constitutionally protected speech.

## The Whistleblower Statute (T.C.A. Section 50-1-304)

70.     Plaintiff incorporates the preceding paragraphs.

71.     Plaintiff "blowing the whistle" was a motivating factor in Defendants' adverse employment actions.

72.     Plaintiff had a clear right not to be suspended, placed on probation, or terminated for whistleblowing.

**Retaliatory Discharge**

73.     Plaintiff spoke out against actions that clearly violated public policy.

74.     Plaintiff's actions were a substantial factor in Defendants' suspending him.

75.     Plaintiff's actions were a substantial factor in Defendants' terminating him.

## PRAYER FOR RELIEF

For these reasons, Plaintiff prays that the Court grants the following relief:

a.      That judgment be entered in his favor,

b.      Back pay, front pay and damages for loss of benefits,

c.      Compensatory damages to Plaintiff for his stress and anxiety,

d.      Punitive and/or liquidated damages,

e.      Attorney's fees, costs, and expenses of this action,

f.      Such other and further relief to which Plaintiff may be entitled, at law or in equity, including reinstatement to his prior position;

g.      Any and all other relief that this Court may deem just and proper to adequately compensate Plaintiff for his injuries, and

h.      That this matter be heard by a jury.

Respectfully Submitted,

/s Robert C. Bigelow, Esq.

Robert C. Bigelow, Esq. #022022
Bigelow Legal, PLLC
4235 Hillsboro Pike, Suite 301
Nashville, TN 37215
(615) 829-8986
rbigelow@bigelowlegal.com