**IN THE UNITED STATES DISTRICT COURT FOR THE**
**MIDDLE DISTRICT OF TENNESSEE**
**COLUMBIA DIVISION**

| | | |
|---|---|---|
| **JOHN TYLER COBB,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **NO. 1:24-cv-00095** |
| | ) | |
| **CITY OF COLUMBIA, TENNESSEE and TONY MASSEY,** | ) | **JUDGE CAMPBELL** **MAGISTRATE JUDGE HOLMES** |
| | ) | |
| | ) | |
| **Defendants.** | ) | |

**MEMORANDUM AND ORDER**

Pending before the Court is a motion for summary judgment (Doc. No. 33) filed by Defendants City of Columbia, Tennessee (the "City") and Tony Massey ("Massey") (collectively "Columbia Defendants"), which is fully briefed. (*See* Doc. Nos. 42, 48). For the reasons discussed below, that motion (Doc. No. 33) and the Columbia Defendants' motion for judgment on the pleadings (Doc. No. 31) are **DENIED**. And the Columbia Defendants' pending motion to strike Plaintiff's responses to the motion and statement of undisputed material facts (Doc. No. 44) and Plaintiff's pending motion for leave to file a reply to the same (Doc. No. 49) are **DENIED** as moot.

## I. FACTUAL BACKGROUND[1]

This is a civil rights action arising from Plaintiff's employment as Chief of the Columbia fire department. On May 3, 2023, there was a report of an active shooter at Columbia Central High School ("Columbia Central"). (Complaint, Doc. No. 1 ¶ 7; Amended Answers, Doc. Nos. 13, 14 ¶ 7). The City and/or Maury County dispatched a special weapons and tactics ("SWAT") team to

[1] At this stage, the Court construes the factual record in the light most favorable to Plaintiff, the nonmoving party. *C.S. v. McCrumb*, 135 F.4th 1056, 1060 (6th Cir. 2025). The factual background in this Memorandum is not a complete statement of the facts in this case but rather includes the facts necessary for the Court's analysis and resolution of the pending motion.

the school. (*See id.* ¶¶ 8-9). The City's Deputy Fire Chief, saw a civilian citizen, Roy Brooks, carrying an AR-15 on school property alongside of the SWAT team, and notified Plaintiff of the same. (*See id.* ¶ 15). Plaintiff then contacted the City's Chief of Police and informed him that Plaintiff believed Roy Brooks was on the scene with an AR-15. (*See id.* ¶ 21). Plaintiff also informed the City Manager, Massey, about Roy Brooks being on the scene with an AR-15. (*See id.* ¶ 23).

On or about May 10, 2023, Plaintiff provided Massey and the HR Director with pictures of Roy Brooks at the scene and requested an investigation. (*See id.* ¶ 27). Later that month, some firefighters complained to Plaintiff that they were being harassed by Roy Brooks. (*See id.* ¶ 30). Plaintiff reported the harassment to Massey and the HR department. (*See id.* ¶ 31).

Plaintiff reached out to the City Attorney on two separate occasions regarding the status of any investigation regarding Roy Brooks being at the school with an AR-15 as well as harassment by Roy Brooks. (*See id.* ¶ 33). Plaintiff asked the City Attorney to conduct an investigation but explained that he (Plaintiff) believed Massey wanted to "cover-up" what happened. (*See id.* ¶ 34). The City Attorney and Plaintiff discussed Plaintiff having a meeting with members of the City Council to inform them of what was going on. (*See id.* ¶ 36).

In August 2023, a Maury County grand jury indicted Roy Brooks for carrying a weapon on Columbia Central property in connection with the active shooter report on May 3, 2023. (Massey Dec., No. 36-2 ¶ 21).

On October 12, 2023, Plaintiff made a presentation to Massey, the City Attorney, and the City Council members that included showing them a video of Roy Brooks on the scene at the Columbia Central on May 3, 2023, with an AR-15. (*See* Columbia Defendants' Exhibit 6, transcript of the City Council executive session held on October 12, 2023). During his presentation,

Plaintiff highlighted a portion of the video that showed Roy Brooks pointing his AR-15 at a young person in their car. (*See id.* at 14). Plaintiff also stated during the presentation that he and other employees and staff in the fire department had experienced internal and external retaliation since May 3, 2023. (*See id.* at 11).

Massey suspended Plaintiff without pay from October 30, 2023, until November 27, 2023, and then placed Plaintiff on a year-long probation. (Massey's Amended Answer, Doc. No. 14 ¶¶ 41, 42; Massey Dec., Doc. No. 36-2 ¶ 36; Doc. No. 36-3 at PageID # 301-02). On the advice of the City Attorney, Massey did not identify any specific factual circumstances supporting his suspension of Plaintiff. (*See* Doc. No. 29 at 22; Doc. No. 36-3). Massey terminated Plaintiff's employment via letter dated March 12, 2024:

> On October 30, 2023, you were suspended for 30 days for insubordinate behavior and placed on probation for one year. Since that time, a concern[ed] citizen has presented to the City numerous text messages from you evidencing a continuation of such insubordinate behavior as well as an effort by you to undermine and impede the successful operation of the City of Columbia.
>
> Such text messages include the following:
>
> - A message calling another city employee "dumbass";
> - A message falsely accusing the chief of police of being involved in an attempted break-in at the apartment of the person who sent the text;
> - A message offering to pay for favorable new stories which would benefit your interest.
>
> Such inacceptable activities, which have occurred while you are on probation, cannot and will not be tolerated, especially not from a department head of the City of Columbia.
>
> As a result, under the authority vested in me, under section 5.02 and section 6.01 of the charter of the City of Columbia, TN, your employment with the City of Columbia is terminated effective March 12, 2024.

(Columbia Defendants' Exhibit 3, Doc. No. 36-3 at PageID # 303-04) (citation modified).

Plaintiff filed the present lawsuit against the City and Massey on October 13, 2024, bringing claims against them under Tennessee's whistleblower statute, Tenn. Code Ann. § 50-1-304, and under 42 U.S.C. § 1983 for allegedly violating his First Amendment rights. (Doc. No. 1).

## II. STANDARD OF REVIEW

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party bringing the summary judgment motion has the initial burden of informing the Court of the basis for its motion and identifying portions of the record that demonstrate the absence of a genuine dispute over material facts. *Rodgers v. Banks*, 344 F.3d 587, 595 (6th Cir. 2003). The moving party may satisfy this burden by presenting affirmative evidence that negates an element of the non-moving party's claim or by demonstrating an absence of evidence to support the nonmoving party's case. *Id.*

In evaluating a motion for summary judgment, the court views the facts in the light most favorable for the nonmoving party, and draws all reasonable inferences in favor of the nonmoving party. *Bible Believers v. Wayne Cty., Mich.*, 805 F.3d 228, 242 (6th Cir. 2015); *Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 570 (6th Cir. 2003). The Court does not weigh the evidence, judge the credibility of witnesses, or determine the truth of the matter. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Rather, the Court determines whether sufficient evidence has been presented to make the issue of material fact a proper jury question. *Id.*

## III. ANALYSIS

As an initial matter, the Court's resolution of the pending motion has been hindered by material deficiencies in its supporting memorandum and statement of undisputed material facts. Most notably, the Columbia Defendants' supporting memorandum does not include any citations

to their supporting statement of undisputed material facts; the overwhelming majority of the facts included in their statement of undisputed material facts are immaterial;[2] their legal arguments are frequently unaccompanied by supporting citations to the record; and their legal arguments are premised on a view of the facts in the light most favorable to themselves. As explained herein, the foregoing deficiencies preclude the Columbia Defendants from carrying their initial burden as the moving parties. Accordingly, the Court resolves this motion without reaching Plaintiff's response.

---

2 For example:

> 18. Mr. Brooks was terminated for insubordination, a violation of the City's sexual harassment policy, and a violation of the City's sick leave policy.
>
> 42. On June 15, 2023, Mr. Cobb attended a City Council meeting and spoke in opposition of a proposed annexation/zoning ordinance located at Trotwood Avenue.
>
> 53. On May 23, 2023, Mr. Brooks filed a lawsuit alleging the City had wrongfully terminated his employment.
>
> 55. CCHS is a school within the Maury County School District and sits on County-owned property.
>
> 87. Thad Jablonski is the Assistant City Manager of Columbia.
>
> 96. Ms. Adams said the responding CPD officers were "awesome" the night of the attempted break-in.
>
> 97. Ms. Adams said the responding CPD officers did "a great job" the night of the attempted break-in.
>
> 102. Individuals can face criminal consequences for making false reports to law enforcement officers.
>
> 117. After his termination, Plaintiff requested a Civil Service hearing.

This along with the numerous amount of facts (123) suggests that defense counsel failed to "to read and follow Judge Richardson's guidance in *McLemore v. Gumucio*, 619 F. Supp.3d 816 (M.D. Tenn. 2021) (*rev'd on other grounds*), regarding what should (or should not) be included in the movant's statement of undisputed material facts," as required under the Initial Case Management Order. (Doc. No. 17 at 7 ("Counsel must carefully draft the statement of undisputed material facts to ensure that each is a concise and focused statement of facts that are material to the outcome of the case and are undisputed as supported by the record.")) (citation modified).

### A. Tennessee Public Protection Act ("TPPA")

Under Tennessee's whistleblower statute, "no employee shall be discharged or terminated solely for refusing to participate in, or for refusing to remain silent about, illegal activities." Tenn. Code Ann. § 50-1-304(b). Through their pending motion, the Columbia Defendants submit that Plaintiff "fails to state a claim upon which relief can be granted" under the TPPA because his termination was caused by "a concerned citizen's report of Plaintiff's inappropriate behavior towards her." (*See* Doc. No. 39 at 21-22). This section of the Columbia Defendants' supporting memorandum is devoid of any supporting citations to the record or their statement of undisputed material facts. (*See id*. at 20-22).[3] "The Court is not required to search the record to unearth the facts to support a movant's claim." *Bryant v. Floyd Cnty. Fiscal Ct.*, 510 F. Supp. 3d 467, 478 (E.D. Ky. 2020). As the Columbia Defendants fail to direct the Court to the location of evidence in the record supporting their foregoing argument, they have failed to meet their initial burden as the parties moving for summary judgment on Plaintiff's TPPA claim. Accordingly, summary judgment is **DENIED** as to this claim.

### B. 42 U.S.C. § 1983

42 U.S.C. § 1983 ("Section 1983") provides that "an individual may bring a private cause of action against anyone who, acting under color of state law, deprives a person of rights, privileges, or immunities secured by the Constitution or conferred by federal statute." *Wurzelbacher v. Jones-Kelley*, 675 F.3d 580, 583 (6th Cir. 2012). Here, Plaintiff claims Massey violated his First Amendment rights when he retaliated against Plaintiff because of his protected

[3] Although this section of the Columbia Defendants' brief contains a footnote to "Exhibit A," it does not provide information as to where any such exhibit is located in the record. (*See* Doc. No. 39 at 21 n.18). The Columbia Defendants filed numbered exhibits in support of their pending motion. (*See* Doc. No. 36).

speech by suspending him without explanation, placing him on a "last chance" probation for one year, and terminating his employment.

**1. First Amendment Retaliation**

"In a First Amendment retaliation claim, retaliation for the exercise of constitutional rights is itself a violation of the Constitution." *Hill v. Lappin*, 630 F.3d 468, 473 (6th Cir. 2010) (citation and internal quotations omitted). "And this right extends to public employees." *Barton v. Neeley*, 114 F.4th 581, 591–92 (6th Cir. 2024) (citing *Bd. of Cnty. Comm'rs v. Umbehr*, 518 U.S. 668, 675 (1996) ("The First Amendment's guarantee of freedom of speech protects government employees from termination because of their speech on matters of public concern.")); *Houston Cmty. Coll. Sys. v. Wilson*, 595 U.S. 468, 474 (2022) (First Amendment prohibits government officials from subjecting individuals to "retaliatory actions" after the fact for having engaged in protected speech). To demonstrate First Amendment retaliation by a government official, a plaintiff must show that: (1) the First Amendment protected his speech; (2) that the official took adverse action against him; and (3) that there was causal connection between his protected speech and the adverse conduct. *See Hall v. Navarre*, 118 F.4th 749, 759 (6th Cir. 2024). Plaintiff claims Massey violated his First Amendment rights when he retaliated against Plaintiff because of his protected speech by suspending him without explanation, placing him on a "last chance" probation for one year, and terminating his employment.

The Columbia Defendants, as the parties bringing the summary judgment motion, have the initial burden of informing the Court of the basis for their motion and identifying portions of the record that demonstrate the absence of a genuine dispute over material facts. *Rodgers v. Banks,* 344 F.3d 587, 595 (6th Cir. 2003). The Columbia Defendants may satisfy their burden by presenting affirmative evidence that negates an element of Plaintiff's Section 1983 claim premised

on First Amendment retaliation or by demonstrating an absence of evidence that supports Plaintiff's case. *See id.* Here, the Columbia Defendants submit that the basis for their motion as to Plaintiff's First Amendment Section 1983 claim is that Plaintiff cannot establish that the First Amendment protected his speech or that there was a causal connection between his protected speech and the adverse conduct. The Columbia Defendants seek to satisfy their burden as the moving parties by attempting to demonstrate an absence of evidence. The Court will address their arguments in turn.

a) <u>Protected Speech – Element One</u>

For public employees, the "protected speech" element of a First Amendment retaliation claim has three parts. *See Patterson v. Kent State University*, 155 F.4th 635, 649 (6th Cir. 2025). A public employee plaintiff must show: "(1) the speech was on a matter of public concern, *Connick v. Myers*, 461 U.S. 138, 146, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983); (2) the speech was not made pursuant to the employee's official duties, *Garcetti v. Ceballos*, 547 U.S. 410, 421, 126 S.Ct. 1951, 164 L.Ed.2d 689 (2006); and, assuming the employee can satisfy the first two elements, (3) the employee's interest in speaking on a matter of public concern outweighs the employer's interest 'in promoting the efficiency of the public services it performs through its employees,' *Pickering v. Bd. of Educ. of Twp. High Sch. Dist. 205*, 391 U.S. 563, 568, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968)." *Josephson v. Ganzel*, 115 F.4th 771, 783–84 (6th Cir. 2024). "Whether an employee engaged in protected speech is a question of law." *Stanalajczo v. Perry*, 174 F.4th 968, 974 (6th Cir. 2026).

i. <u>Matter of Public Concern</u>

Speech involves a matter of public concern when it relates to issues of "political, social, or other concern to the community" and is of "public import." *See id.* (citing *Connick*, 461 U.S. at

147-48). To determine whether a public employee's speech involves a matter of public concern, a court considers the content, form, and context of the statement, as revealed by the whole record. *See Connick*, 461 U.S. at 147-48. "The inappropriate or controversial character of a statement is irrelevant to the question whether it deals with a matter of public concern." *Rankin v. McPherson*, 483 U.S. 378, 387 (1987). While the motive for a public employee's speech is a relevant factor in determining whether speech involves a matter of public concern, the pertinent question is not why the employee spoke, but what the employee said. *See Myers v. City of Centerville, Ohio*, 41 F.4th 746, 760 (6th Cir. 2022). That means courts examines the "point" of the speech in question. *Id.*

Courts "next ask whether that point concerned the public." *Id.* at 760. Speech concerns a matter of public concern "when it is a subject of legitimate news interest; that is, a subject of general interest and of value and concern to the public." *Id.* (citing *Lane v. Franks*, 573 U.S. 228, 241 (2014)) (internal quotations omitted). "However, even if speech addresses an internal personnel dispute, it may involve a matter of public concern if the dispute arose from actual or potential wrongdoing or any breach of the public trust." *Id.* at 761 (citations and internal quotations omitted); *see also Farhat v. Jopke*, 370 F.3d 580, 590 (6th Cir. 2004) (speech containing information that facilitates "informed decisions about the operation of ... government" involves a matter of public concern); *Chappel v. Montgomery Cnty. Fire Prot. Dist. No. 1*, 131 F.3d 564, 575 (6th Cir. 1997) (the relevant distinction is "between matters of public concern and matters only of personal interest, not civic-minded motives and self-serving motives").

Through their pending motion, the Columbia Defendants do not argue or otherwise dispute that Plaintiff's speech was on a matter of public concern. Accordingly, the Columbia Defendants fail to show that Plaintiff lacks proof that his speech was on a matter of public concern.

ii. Pursuant to Plaintiff's Job Duties

Public employees' statements made pursuant to their official duties, rather than in their capacities as private citizens, are not protected by the First Amendment. *See Barton v. Neeley*, 114 F.4th 581, 588 (6th Cir. 2024) (citing *Garcetti*, 547 U.S. at 421). "But a public employee's speech that 'simply relates to public employment or concerns information learned in the course of public employment' may be protected." *Id.* at 588–89 (quoting *Lane v. Franks*, 573 U.S. 228, 239 (2014)). "[T]he question of whether a statement was spoken as a public employee or as a private citizen for First Amendment purposes [is] 'a practical one,' requiring a fact-specific inquiry into the 'duties an employee actually is expected to perform.'" *Fox v. Traverse City Area Pub. Schs. Bd. of Educ.*, 605 F.3d 345, 350 (6th Cir. 2010) (quoting *Garcetti*, 547 U.S. at 424–25).

In conducting an inquiry as to whether a public employee's statement was spoken in their capacity as a public employee or as a private citizen for First Amendment purposes, courts look to the "content and context" of the statement, consulting several non-exhaustive factors, including the speech's impetus; its setting; its audience; and its general subject matter. *See Barton*, 114 F.4th at 589 (citing *Fox*, 605 F.3d at 348, and *Mayhew v. Town of Smyrna, Tennessee*, 856 F.3d 456, 464 (6th Cir. 2017)). However, "the mere fact that a citizen's speech concerns information acquired by virtue of his public employment does not transform that speech into employee—rather than citizen—speech. The critical question ... is whether the speech at issue is itself ordinarily within the scope of an employee's duties, not whether it merely concerns those duties." *Id.* (quoting *Lane*, 573 U.S. at 240). "Whether speech addresses matters of public concern is not premised on the communication of that speech to the public." *Myers*, 41 F.4th at 764.

Through their pending motion, Defendants appear to contend that Plaintiff lacks evidence to show he spoke as a private citizen rather than as a public employee; *i.e.*, that his speech was not

made pursuant to his job duties. (*See* Doc. No. 39 at 20 ("Plaintiff cannot now claim that he was speaking as a private citizen when no evidence of such has been produced in this case.")). Despite their foregoing contention, the Columbia Defendants do not argue or claim to have evidence that would show Plaintiff lacks proof as to the "critical question" of whether Plaintiff's speech at issue was *itself* ordinarily within the scope of his job duties as Chief of the Columbia fire department. (*See* Doc. No. 39 at 19; Defendants' statement of undisputed material facts, Doc. No. 37).[4] Neither their memorandum nor their statement of undisputed material facts direct the Court to evidence concerning Plaintiff's job duties. (*See id.*).

Rather, to support their contention that Plaintiff lacks evidence he was speaking as a private citizen, the Columbia Defendants direct the Court solely to the following portion of a transcription of Plaintiff's presentation to the City Council on October 12, 2023:

> The -- this directly affects the safety of my department responding to an emergency with unauthorized people, but in this case, it's even worse. My employees are responding to a scene with an unauthorized person working the scene that has been terminated and is actively harassing members of my fire department.
>
> ….
>
> As fire chief, it is crucial for me to be informed about incidences that could potentially impact the safety of our firefighters, first responders and the general public.

(Columbia Defendants' Exhibit 6, Doc. No. 36-6 at 20:22-21:2; 21:17-20). Viewed in the light most favorable to Plaintiff as the nonmoving party, the foregoing portion of Plaintiff's presentation

---

[4] To the extent the Columbia Defendants argue Plaintiff's speech was made pursuant to his official duties because the speech relates to his employment as Fire Chief and information he learned during that employment, *Lane* holds this is not dispositive:

> Truthful testimony under oath by a public employee outside the scope of his ordinary job duties is speech as a citizen for First Amendment purposes. That is so even when the testimony relates to his public employment or concerns information learned during that employment.

*Lane*, 573 U.S. at 238.

to the City Council on October 12, 2023, does not show that he lacks evidence as to whether his speech was ordinarily within the scope of his duties as Chief of the Columbia fire department. The Columbia Defendants do not argue otherwise. Nor do they argue Plaintiff's foregoing statement negates the assertion that Plaintiff's speech itself was not ordinarily within the scope of his duties. Further, the Columbia Defendants did not include any portion of this transcript in their statement of undisputed material facts. (*See* Doc. No. 37).

Accordingly, the Court finds that the Columbia Defendants have failed to meet their initial burden, as the movants for summary judgment, of showing an absence of evidence as to this subpart of Plaintiff's claimed constitutional violation. As such, the Court does not reach Plaintiff's response regarding this part of the Columbia Defendants' motion. *See Hunter v. Caliber Sys., Inc.*, 220 F.3d 702, 726 (6th Cir. 2000) ("If a moving party fails to carry its initial burden of production, the non-moving party has no obligation to produce anything, even if the nonmoving party would have the ultimate burden of persuasion.").

iii. Balancing Test

Next, the court must balance Plaintiff's interests, as a citizen, in commenting upon matters of public concern and the City's interests, as an employer, in promoting the efficiency of the public services it performs through its employees. *See Noble v. Cincinnati & Hamilton Cnty. Pub. Libr.*, 112 F.4th 373, 382–85 (6th Cir. 2024) ("Weighing these competing interests, we hold that Noble's interest in his speech outweighs the Library's claimed efficiency interest because no evidence indicates that Noble's speech significantly hindered Library operations."). "[I]t is impermissible to allow a superior to terminate an employee simply because tensions that did not impede the functions of the workplace arose over such protected speech." *Murphy v. Cockrell*, 505 F.3d 446, 453 (6th Cir. 2007) ("Cockrell presented no evidence that Murphy's speech impeded her duties at

the PVA office. Cockrell also made no showing that Murphy's speech undermined any of the legitimate goals or missions of the PVA office[.]").

Here, the Columbia Defendants do not direct the Court to the location of evidence in the record showing that the City's operations were, in fact, affected by Plaintiff's speech. *See Rankin v. McPherson*, 483 U.S. 378, 388–89 (1987) (protecting a public employee's speech where there was no evidence that it interfered with the efficient functioning of the office). And while a public employer need not wait until an actual disruption to discipline an employee, its anticipation of disruption must be objectively reasonable. *See Noble*, 112 F.4th at 384; *see also Josephson v. Ganzel*, 115 F.4th 771, 785 (6th Cir. 2024) ("…they did not provide any evidence that the Medical School's accreditation was, in fact, affected by Josephson's activities. So Defendants only had concerns, and the mere fear or apprehension of disturbance is not enough to overcome the right to freedom of expression."). Here too, the Columbia Defendants fail to direct the Court to the location of evidence in the record showing that Massey anticipated Plaintiff's speech would disrupt the City's functioning or that any such anticipation was objectively reasonable.

In the absence of any developed argument and/or supporting citations to the record concerning this subpart of Plaintiff's claimed constitutional violation, the Columbia Defendants fail to show that Plaintiff lacks proof to establish it. Thus, the Columbia Defendants have failed to show that Plaintiff lacks evidence that his speech was protected under the First Amendment.

b) <u>Causal Connection – Element Three</u>

As for the essential element of a causal connection between the protected speech and adverse action(s), the Columbia Defendants assert that Plaintiff lacks evidence "to show that his speech about Roy Brooks was a substantial or motivating factor of his termination." (*See* Doc. No. 39 at 14). However, in the same argument section, the Columbia Defendants expressly

acknowledge that Plaintiff *does* have such evidence. (*See id*. ("The only potential causal link between his speech and any disciplinary action was the executive session where Plaintiff presented video from CCHS of Roy Brooks at the emergency call.")).[5] Accordingly, this argument fails.

The Columbia Defendants also direct the Court to Massey's declaration stating, in pertinent part, that his decision to discipline Plaintiff was "based on *all his behavior throughout the summer*, especially his failure to cooperate with [the Columbia Police Department] and his continuous unsubstantiated accusations about a [Columbia Police Department] 'cover-up' regarding Mr. Brooks[.]" (Massey Dec., Doc. No. 36-2 ¶ 36) (emphasis added). However, viewing this evidence in the light most favorable to Plaintiff (as the nonmoving party) and drawing all reasonable inferences in his favor, a reasonable jury could find that Massey's vague reference to "all [Plaintiff's] behavior throughout the summer" included Plaintiff's protected speech in May 2023. Stated another way, Massey's proffered justification for his decision to discipline Plaintiff does *not show* that Plaintiff's protected speech in May 2023 was *not* a motivating factor in that decision.

Accordingly, the Columbia Defendants have failed to carry their initial burden as the moving parties of showing that Plaintiff lacks evidence of a causal connection between his protected speech in May 2023 and Massey's decision to discipline Plaintiff in October 2023. As such, the Court does not reach Plaintiff's response regarding this part of the Columbia Defendants' motion. *See Hunter*, 220 F.3d at 726.

---

[5] In their reply, the Columbia Defendants also acknowledge that "evidence other than temporal proximity to which Plaintiff can point to prove causation is that the City did not conduct an HR investigation before his termination. Plaintiff takes issue with the fact that Mr. Massey was the individual who conducted the investigation that led to Plaintiff's termination." (*See* Doc. No. 48 at 5).

For the foregoing reasons, the Columbia Defendants have failed to show that Plaintiff lacks evidence to show a violation of his First Amendment rights. Accordingly, summary judgment is **DENIED** on this basis.

### C. Qualified Immunity – First Amendment Retaliation

Massey also moves for summary judgment on Plaintiff's Section 1983 claim on qualified immunity grounds. "The doctrine of qualified immunity provides that government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Cooperrider v. Woods*, 127 F.4th 1019, 1035 (6th Cir. 2025). Summary judgment based on qualified immunity is appropriate unless the evidence viewed in the light most favorable to the plaintiff would permit a reasonable juror to find that: (1) the defendant violated a constitutional right, and (2) the right was clearly established. *See King v. City of Rockford, Michigan*, 97 F.4th 379, 390 (6th Cir. 2024). Here, the Court has already determined that the Columbia Defendants have failed to show that Plaintiff lacks evidence to show a violation of his First Amendment rights. As such, the Court turns to the "clearly established" prong of the qualified immunity analysis.

#### 1. Clearly Established – Prong Two of Qualified Immunity Analysis

"The focus in determining whether an official is entitled to qualified immunity is on the objective legal reasonableness of the official's actions in light of clearly established law." *Garvie v. Jackson*, 845 F.2d 647, 649 (6th Cir. 1988). "For a right to be clearly established, existing precedent must have placed the statutory or constitutional question beyond debate." *Bell v. City of Southfield, Michigan*, 37 F.4th 362, 368 (6th Cir. 2022) (citation modified). The Sixth Circuit does not require "a case directly on point or on all fours with the instant fact pattern to form the basis

of a clearly established right" such that "existing precedent can make an action's unlawfulness apparent via direct holdings, from specific examples described as prohibited, or from the general reasoning that a court employs." *Bender v. Village of Mariemont, Ohio*, 180 F.4th 861, 881 (6th Cir. 2026) (citation modified); *see also Aaron v. King*, 171 F.4th 822, 826 (6th Cir. 2026) ("General statements of the law are also capable of giving clear and fair warning to officers even where the very action in question has not previously been held unlawful.") (citation modified).

But federal courts cannot rely on state and unpublished cases to determine whether a right is clearly established for qualified immunity purposes. *See Guptill v. City of Chattanooga, Tennessee*, 160 F.4th 768, 781–82 (6th Cir. 2025); *see also Lovell v. Cnty. of Kalamazoo, Michigan*, 172 F.4th 931, 939 (6th Cir. 2026) ("unpublished cases do not clearly establish anything because they do not even bind us—let alone state officials.") (citation modified). Indeed, it has been clearly established since at least June 14, 2022, that "unpublished cases cannot define clearly established law." *Bell v. City of Southfield*, 37 F.4th 362, 368 (6th Cir. 2022) (citation omitted). Accordingly, by 2023, any reasonable official would have been on notice that unpublished cases do not clearly establish any law for purposes of qualified immunity.

As an initial matter, a public employee's First Amendment right to engage in speech on matters of public concern without retaliation has been clearly established for decades. *See e.g.*, *Bd. of Cnty. Comm'rs v. Umbehr*, 518 U.S. 668, 675 (1996) ("The First Amendment's guarantee of freedom of speech protects government employees from termination because of their speech on matters of public concern."); *Chappel v. Montgomery Cnty. Fire Protection Dist. No. 1*, 131 F.3d 564, 580 (6th Cir. 1997) ("All public officials have been charged with knowing that public employees may not be disciplined for engaging in speech on matters of public concern…."); *Hoover v. Radabaugh*, 307 F.3d 460, 469 (6th Cir. 2002) ("[A]s a matter of pure law, the rights

here are clearly established: a reasonable official would know that terminating an employee with the motivation, even in part, of quieting the plaintiff's public speech about the illegal activities of the Department violates the Constitution."); *Garcetti v. Ceballos*, 547 U.S. 410, 419 (2006) ("So long as employees are speaking as citizens about matters of public concern, they must face only those speech restrictions that are necessary for their employers to operate efficiently and effectively."); *See v. City of Elyria*, 502 F.3d 484, 495 (6th Cir. 2007) (holding that the law was clearly established by September 2001 that "a public employee's right to speak on matters of public concern without facing improper government retaliation was settled: such statements are protected, even if later proven untrue, as long as they are not deliberately or recklessly false.").

For the clearly established prong in the First Amendment retaliation context, the Sixth Circuit has held that courts should "ask whether any reasonable official would have understood that Plaintiff's speech was protected, and thus that the official could not retaliate against him." *See Josephson v. Ganzel*, 115 F.4th 771, 789-90 (6th Cir. 2024). Here, the Columbia Defendants assert that Massey "was not on notice that he was violating Plaintiff's constitutional rights for terminating his position as Fire Chief after he learned that Plaintiff participated in conduct unbecoming a City department head" because "no case exists" where a city department head had bribed and harassed a local reporter and accused a city police chief of retaliating against him. (Doc. No. 39 at 24).

This argument is not responsive to the controlling question of whether any reasonable official would have understood that *Plaintiff's speech* was protected, and thus that the official could not retaliate against him. *See Josephson*, 115 F.4th at 789-90. The Columbia Defendants' argument is also contrary to the applicable standard of review because it is incorrectly premised on: (1) how Massey rather than "any reasonable official" understood the law at the relevant time; and (2) an account of the facts in this case interpreted in the light most favorable to the Columbia

Defendants rather than Plaintiff. *See e.g.*, *Williams v. City Of Canton, Ohio*, 168 F.4th 933, 942-43 (6th Cir. 2026) (affirming denial of summary judgment on qualified immunity grounds based on finding that "all 'reasonable' officers would have recognized that they should not attempt to kill a nonthreatening (if reckless) New Year's reveler" under the facts of the case "interpreted in the light most favorable to Williams's wife[.]").[6]

The Columbia Defendants then direct the Court to two unpublished decisions that turned on the third subpart of the protected speech element – the balancing test – in resolving whether the speech at issue was protected under the First Amendment. (*See* Doc. No. 39 at 24 (citing *Fitzpatrick v. City of Frankfort, Kentucky*, 305 Fed. Appx. 258, 260-65 (6th Cir. 2008) and *Pucci v. Nineteenth Dist. Court*, 596 Fed. Appx. 460, 470-72 (6th Cir. 2015)). In *Fitzpatrick* and *Pucci*, the determining factor in the balancing test was the presence of evidence or lack thereof showing that the employees' speech significantly hindered or impaired their respective government employers' public functions. In *Fitzpatrick*, there was such evidence. *See* 305 Fed. Appx. at 260-65 ("we cannot ignore evidence of dissension in the department, disharmony between coworkers, and impairment of discipline reflected in the opposing letters sent in the wake of plaintiff's 'call to arms.'"). In *Pucci*, there was not. *See* 596 Fed. Appx. at 471-72 ("Pucci's complaints caused disharmony. … while the disharmony manifested itself in low morale in the courthouse, there is no evidence that the disharmony meaningfully interfered with the court's public operations. There

---

6 The Columbia Defendants' above referenced argument appears to ignore Sixth Circuit "precedent [from 2002] hold[ing] that an adverse action motivated in part by protected speech violates the First Amendment—even when an employee has other misconduct on the record." *DeVooght v. City of Warren, Michigan*, 157 F.4th 893, 903 (6th Cir. 2025) (citing *Hoover v. Radabaugh*, 307 F.3d 460, 469 (6th Cir. 2002) ("[A]s a matter of pure law, the rights here are clearly established: a reasonable official would know that terminating an employee with the motivation, even in part, of quieting the plaintiff's public speech about the illegal activities of the Department violates the Constitution.")).

is no evidence that Pucci's complaints caused tasks to go undone, work quality to lapse, or the public confidence in the state judiciary to wane.").

As noted above, the Columbia Defendants do not direct the Court to the location of evidence in the record showing that the City's operations were, in fact, affected by Plaintiff's speech or that it was reasonably anticipated to do so. *See supra*. Nevertheless, the Columbia Defendants assert that "Massey was not on notice that he was not in a similar situation as *Fitzpatrick*." (Doc. No. 39 at 25). To the extent the Columbia Defendants argue Massey reasonably relied on *Fitzpatrick* or that *Fitzpatrick* has any import as to the clearly established prong of the qualified immunity analysis in this case, such arguments fail as a matter of law given that it was clearly established by 2023 that unpublished cases cannot define clearly established law.

In sum, the Columbia Defendants' motion for summary judgment as to the clearly established prong of the qualified immunity defense is premised on an erroneous view of the facts in this case and on erroneous and/or irrelevant legal arguments. As such, the Court finds the Columbia Defendants have moved for summary judgment on qualified immunity grounds in name only. It is well established that a party cannot "mention a possible argument in the most skeletal way, leaving the court to put flesh on its bones." *Buetenmiller v. Macomb Cnty. Jail*, 53 F.4th 939, 946 (6th Cir. 2022) (quoting *McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997) (cleaned up)). Accordingly, the Court finds that the Columbia Defendants have forfeited the clearly established prong of the qualified immunity analysis on summary judgment by failing to make an effort to develop any legally sound argument in support of the same.

## IV. CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment (Doc. No. 33) is **DENIED**. And because the Court did not reach or consider Plaintiff's response, the Columbia

Defendants' pending motion to strike Plaintiff's responses to the motion and statement of undisputed material facts (Doc. No. 44) and Plaintiff's pending motion for leave to file a reply to the same (Doc. No. 49) are **DENIED** as moot.

Finally, on the same day they filed the present motion, the Columbia Defendants also filed the pending motion for judgment on the pleadings (Doc. No. 31) premised on the same arguments as their summary judgment motion. As the Court has already considered and rejected these arguments herein, it would be a waste of this Court's already limited judicial resources to consider them again under the less demanding standard of Rule 12. Accordingly, that motion (Doc. No. 31) is also **DENIED**.

It is so **ORDERED**.

William L. Campbell, Jr.

WILLIAM L. CAMPBELL, JR.
CHIEF UNITED STATES DISTRICT JUDGE